First case, United States v. Kwok Good morning, your honors. May it please the court, my name is Sean Hecker and I represent defendant appellant Roger Kwok. I've asked to reserve two minutes for rebuttal. The parties in this appeal agree that the district court committed procedural error by denying Mr. Kwok notice of and an opportunity to address sealed letters from of his co-defendant's crimes, particularly the letter of Christine Gallivan, before imposing a sentence of 37 years imprisonment, two years more than Mr. Wong received in his sentence and two years more than the government argued would be an appropriate sentence and in order to avoid unwarranted disparities at sentencing. I ask you about this concession of plain error. As I read the record, you called and sent a copy of the sentencing proceeding before Judge Deary to Judge Johnson. Judge Deary relied heavily, as I read the transcript of that sentencing, on the letter . . . is it Ms. Gallivan? He relied heavily on that letter and he said, as I read Judge Johnson's transcript, he spent most of his time on the facts of the case before him, describing in vivid detail the nature of the two murders that the defendant committed and he said, well, in the case . . . just almost as an aside, in one short paragraph, he said in the case that Judge Deary sentenced, there was a very moving letter, we'll call it a letter of forgiveness and in my case, there is the opposite and that was it. Having called and Judge Deary's attention to the whole . . . and sending him a copy of the transcript of the sentencing before Judge Johnson, a copy of the sentencing before Judge Deary, which made repeated references to the letter that Judge Deary had gotten and relied on, I don't see the plain error in this case, if I see error at all. I don't know what . . . I assume you may have the letter now, but Judge Johnson described what was in the letter fairly accurately consistent with the way Judge Deary described it and I'm trying to figure out what exactly is the plain error when you call this stuff to his attention. Your Honor, we certainly called Judge Johnson's attention to the sentence that was imposed on Alex Wong and we sent a transcript in order to evidence that Alex Wong had been sentenced to 35 years and in our letter to . . . Probably necessary to send them a transcript to reference the fact that Judge Deary had sentenced the co-defendant to 35 years. Well, our letter and our purpose in sending . . . In fact, depending on when the probation reports in these cases get prepared, the PSR to Judge Johnson would have indicated what the sentence was, but you may not have known that. I actually don't think that the PSR, because of the timing of the two sentences, included what had happened in Alex Wong's case. I know, but you wrote a long letter and I can't believe that you didn't call the whole transcript to Judge Johnson's attention because you wanted him to be influenced by what Judge Deary did. Judge Deary was extraordinarily influenced by the letter which he sent and I don't know what Judge Johnson did that constituted plain error when he said, well, I have a different letter in my case. Respectfully, Your Honor, both parties, the government and Mr. Kwok, drew attention to Alex Wong's sentence because a comparison of the two cases made it plain that imposing a sentence that was higher on Roger Kwok would be unreasonable. It would create unwarranted disparities. There were important distinctions between the two cases. When you and the government called Judge Johnson's attention to the letter in the Wong case, did you, well, I'm sorry, to the sentence in the Wong case, did you make mention of the victim letters? No, we absolutely did not. Neither party did. And indeed, I think it was completely unanticipatable that Judge Johnson would be reviewing one of the sealed letters. Why would you bring the Wong sentencing to Judge Johnson's attention? Because a comparison of the two cases objectively leads to the conclusion that Roger Kwok's behavior in prison was substantially better than that of Alex Wong's. And there were differences in the circumstances of the offense. Admittedly, each involved heinous crimes, double murders both. But they're very similar defendants, two 16-year-olds, part of the same Chinese gang. The facts of the murders were different. In Alex Wong's case, he volunteered to commit these murders. He walked into the restaurant, he executed the owner of the restaurant, and then he shot indiscriminately at potential victims. After he was arrested while in prison, he conspired to kill the remaining eyewitness, one of whom wrote into his case, interestingly, and agreed that he should live his life. By contrast, by contrast, Roger Kwok was the new guy in the Green Dragons, a murder executed by the leader of that gang. And they were told to let the new guy do it. He did not volunteer for that crime. And during his more than 26, almost 27 years in prison, he has zero, zero incidents of violence. Alex Wong, by contrast, he was involved in three stabbings into his 20s. So we brought this case to the attention of the court to draw a distinction between what might look like a similarly situated defendant, but where Roger Kwok had a demonstrably better prison record and the facts of his offense were different in ways that argued for a lower sentence. That may be true. I'm not, I'm not going to, I'll take your word for it, but nevertheless, the sentencing minutes, sentencing minutes before Judge Deary make repeated, repeated references to the, to the, to the quote, forgiveness letter. And it's quite obvious to me that Judge Deary relied on that. And so I don't understand how you could claim an awareness of the letter or for that matter, that Judge, that Judge Johnson mischaracterized it. It's up to him. It's up to, as I understand the law, the sentencing disparity that the sentencing guidelines talk about, national disparity. Although we've said that a judge is free to take into account disparities among co-defendants in the same case. Indeed, Your Honor. And here we have a situation where three juveniles, three 16 year olds were all given resentencings after the Miller case came down. They were sent to three different judges. Well, that was a mistake. I, well, I agree. I, I, once a few years ago when I was sitting by designation, I wrote an opinion saying that, that this shouldn't happen. That it's a mistake that three co-defendants should be sentenced by the same judge. And when they're split up, every judge has their own subjective view of what an appropriate sentence should be. That was one of the reasons for the guidelines to, to, to eliminate to a degree that subjective view of the evidence. Judge Johnson is an excellent judge who's had an extraordinary life experience. He could view the facts differently. In fact, he recited them in significant detail and he, he, uh, and he reached the same conclusion that Judge Raggi did, which, in which he said she wouldn't exercise her discretion to downwardly depart because of the horrible nature of this, of the double murders. And he, he, if you read the Judge Johnson's, what Johnson said, he, he, he spent most of his time talking about the facts of the case and the letter that he got, if he relied on anything, um, it was the letter that he got. Should he have not relied on the letter that he got? Your Honor, of course, Judge Johnson was, uh, was right to consider the victim impact statements here. There was only one victim, a cousin of one of the victims who wrote in and she asked for an injunction to keep Roger Kwok in prison. A brother of one of the victims took no position, but, but in fairness, it was a something like a quarter, I don't remember the exact timeframe, but this was a quarter of a century later. And I think Judge Johnson had to order the U.S. attorney to go and see if he could find, uh, any of the relatives of the two victims who, who, who were murdered. That's absolutely right, Your Honor. And from our perspective, the notion that whether or not a victim gives forgiveness, whether you can find a victim, whether that victim writes in and whether they suggest forgiveness, whether they find it in their hearts to forgive the defendant is not a reasonable basis on which to impose a higher sentence in this case than was imposed in Alex Wong's case. But it's a reasonable basis for Judge Deery to give a lesser sentence. I take it. I, it's a little. I think you say in your brief, if I remember it correctly, that victim impact statements don't really have anything to do with the criminal activity and they could vary from case to case and some victims take one position and some victims take another, but if that's the case, if there was an error, it must have been made, if you are right, and I'm, and I'm paraphrasing your brief correctly, it was Judge Deery who committed error in considering the, the letter for a, as a basis for the sentence that he imposed. I'm not saying he did. I'm just saying on the premise that I understand you're arguing. No, I don't think so, Your Honor. It is unquestionably right to look at victim impact statements, to think about the nature and circumstance of the offense and the harm that was caused. That's undeniably right. I read Judge Deery's transcript a little bit differently. He was obviously moved by Ms. Gallivan's letter. I think it is very difficult to argue that he imposed a lower sentence based on that moving letter. I think he imposed the sentence. He did lower than what is unclear. I mean, he, he, he, Well, I don't, I, I was responding to Your Honor's question. I don't think he reduced the sentence after reading the Gallivan letter. I think it'd be difficult to do so. It's an incredibly moving, devastating letter about the impact of a heinous crime. It is very difficult to read Judge Deery's reasoning as being one in which he reduced the sentence beyond what he otherwise would have done, which is something that the government kind of suggests here, it is clear to us from looking at the transcript, and I'm focused on, on A145 and A146, that Judge Johnson, to distinguish the two cases, to justify a higher sentence here, relied on the differences between the victim impact letter. We respectfully submit that was not a reasonable basis on which to impose a higher sentence, and there are very compelling reasons here to impose a lower one that weren't mentioned by Judge Johnson. Thank you. You have some time for rebuttal. We'll hear from the government. Uh, good morning. Uh, Judge Johnson did not rely solely or even substantially on the victim impact letters to determine his sentence. In fact, uh, Judge Corman noted Judge Johnson recited in significant detail, the fact, he said it's like apples and oranges. I mean, that makes it, that sounds to me like he, he, he did give great weight to the differences, uh, set forth in the victim impact letters. I think that read in context, Judge Chin, the comment about apples to oranges was a comment specifically about whether or not Judge Johnson was going to further moderate the sentence that he imposed on Roger Clark in light of the fact that one of the victims in Alec Wong's case had forgiven Alec Wong and therefore led Judge Dewey to give a lower sentence than he otherwise anticipated. I don't think the apples should that make that much difference in whether the victim forgives the defendant? I think for Judge Dewey, it was, he was entitled to take into account victim forgiveness in reducing the sentence that he was otherwise going to impose on Alec Wong. Was Judge, was it permissible for Judge Johnson to increase the sentence in absence of victim forgiveness? I don't think that that's what happened here with respect to Judge Chin. Assuming that is what happened, would that be appropriate? I think that it is a factor that he could consider. I think that it's more accurate to describe it as Judge Johnson, uh, relying on the facts of Roger Clark's own case in arriving at his sentence and then declining to reduce, if you looked at the facts of the two cases, including the period of time in prison, uh, Wong had, was involved in three stabbings while he was in prison, right? He was, and Clark also was twice, um, violated in prison for possessing dangerous weapons. Now he never used those weapons, but certainly that's conduct that could have been taken into account as well. It wasn't an error. If you looked at the two cases side by side, I think, uh, certainly a reasonable argument could be made that, that Clark should not be getting a sentence worse or, or higher than Wong's sentence. If you look at the two cases side by side, uh, Your Honor, I submit that there are factors on which Judge Johnson could have relied to impose a higher sentence on Roger Clark and in his sentencing remarks, what are those factors? That's what I'm going to tell you, Judge Chin. In his sentencing remarks, he specifically, uh, commented on the details of Roger Clark's murder and particularly on the effect that it had on Tina sham and Tommy mock themselves from the time that they were abducted by Roger Clark and three other codependents who are armed forced into a car at gunpoint driven 45 minutes down the Long Island expressway. And then taken to a secluded point in Long Island, Todd had the hand tied behind their back and forced to kneel. And judge Johnson focused during that period of time. What are these victims thinking? Much like judge Rodney had before him, judge Johnson said, I wonder what was happening when Tina sham was begging for her life and Tommy mock was stunned because he didn't know these people and had no idea what was going on. So judge Johnson focused. In terms of, of, of substantive unreasonable, I frankly don't have a problem with the sentence for a double murder. The question though, is procedurally, if the sentencing judge reviews a sealed sentencing letter and the defendant doesn't get to see it, I mean, how, how significant of a problem is that? I mean, the government concedes it's plain error. So the only question is whether, you know, it, it, it has a sufficient impact to raise real concerns. And, and, and, and I do have concerns about sentencing someone based on a victim impact letter that the defendant doesn't get to see. Absolutely. Your Honor, the judge, the government agreed that it was an error for judge Johnson to have relied on the Gallivan letter without having given notice or opportunity for the defendant to assume that. First of all, I don't understand Mr. Prowder, he, the, the defendant called attention to the sentencing minutes before judge Deary, the sentencing minutes before judge Deary described the Gallivan letter, what, what wasn't in the Gallivan letter that was otherwise relevant, I would agree that if a judge relied on a sealed letter, which he never disclosed, that would be another problem. But here we have a totally reverse situation where I suspect the only reason judge Johnson knew about the Gallivan letter was because they called attention to the, to the, uh, minutes of the sentencing before judge Deary. And, and he specifically alluded to it and judge Johnson described it and there was no objection. I don't, I don't, I know you can make whatever concessions you want, but I don't see this as, as a kind of plain error and I don't think it was an accident that this, I mean, an objection wasn't made because it was an accurate description of the relevant portions of the letter. And that's exactly right. And that's why, uh, you know, we, we argue that the error, if there was one, judge Corman was harmless because in fact, the defendant, Roger Crock, was on notice of everything that the victim had said in Alex Wong case because judge Deary had recounted them in the transcript of the sentence. And the only portion that the letters that were not described were statements by the victim in that case of the impact of Alex Wong murder, murders on their lives, which of course weren't relevant to Roger Crock's sentencing. Judge Deary even refers to that. He says, I got this letter and I just, they all expressed their views. They weren't necessarily, he, he, he discussed it with his colleagues. I wasn't one of them, by the way, um, about the sentence. And then I got this letter. They all expressed their views, weren't necessarily consistent. And I felt obligated to return to them after I got this letter. In a way it doesn't, it just describes in very difficult, very graphic terms, the enormity of your conduct and, and the suffering. Uh, and yet she says, I find no joy in another human being suffering, suffering. I bear no anger or hatred, hate towards Alex Wong and his group. My desire is not about seeking revenge or restitution. It's about doing and getting the right result. I will leave Alex Wong to his God and me to mine. And Judge Deary then says, I had to take a breath when I read that letter. I mean, what didn't he tell the lawyer for the opposing side who call this to his attention? I think that he told, I think he told the defense everything. I think that based on what Judge Deary described of the Gallivan letter, Roger Crock had all the information he needed to be able to fashion an argument based on that letter. Now he drew, as Judge Corman noted, it was Roger Crock who drew Judge Johnson's attention to that particular sentencing and made arguments about the comparison between Crock and Wong. And in essence, invited the error that was committed because now he's standing before this court and saying, well, Judge Johnson shouldn't have relied on looking at what the victim said in Alex Wong case because we only called the other case to his attention for purposes of comparing the offense conduct and the disciplinary record. Now Judge Chin, going back to the offense conduct for a second, that was a significant difference between the two cases because in Alex Wong case, the murders, as deplorable as they were, were immediate, but in Roger Crock case, and this is what Judge Johnson focused on, there was a long period of time, at least 45 minutes, perhaps more, where the victim were dreading and suffering because they knew what was going to happen. And you heard about Tina Sham begging for her life and Judge Roger saying, and then Judge Johnson saying as well, that he couldn't get that image out of his mind, that was one basis on which he could have distinguished the two. You also mentioned the violent stabbing while in prison. In Alex Wong case, those occurred between 1994 and 1997. When Judge Dewey re-sentenced Alex Wong in 2016, obviously he had two murders that were committed in 1989, which certainly were far more violent than the prison stabbing between 1994 and 1997. And Judge Dewey specifically commented that Alex Wong had done a radical long term re-socialization program in 2001 after she had no more violent incidents. And so by the time he came up re-sentencing in 2016, Alex Wong had 15 years stretch in prison with no violent incidents at all. And that was something that Judge Dewey also specifically commented on in sentencing Alex Wong to 35 years. Roger Kwok also went through a re-socialization program called the Special Management Unit, but he did that in 2009. And so when he came up for sentencing, he had a much less time in prison where he completed this program and had seen the turnaround. In fact, up until 2008, he had been suffering from a heroin addiction and had 20 disciplinary infractions in the period of 13 years because of that heroin addiction. So those were distinctions. They also found, what is it, shanks he was in possession of? It wasn't just alcohol. I'm sorry, I apologize. Didn't they find other weapons that he had during that first period between up until 2008? For Alex Wong, for Roger Kwok. Kwok. For Kwok, yes. They found two shanks in, just a moment, in 1995 and in 1999, both times he possessed, the first time he possessed three eight and a half inch long shanks. And the second time he possessed a nine and a half inch long sharpened aluminum weapon. Did Judge Johnson talk about the respective records in prison and what each had done or hadn't done? He did not focus on the prison disciplinary record in his remarks of sentencing, but obviously he said, no, I have the submission. I have the oral argument. I have the 3553A factors. And of course the prison records had been the subject of both briefing in the sentencing submissions and discussion of the oral argument. So he was certainly aware of those factors. All right. Thank you. Thank you, Judge Chin. Judge Corman. Thank you. Your honors, the government conceded below repeatedly that Roger Kwok's prison record was less violent and was better than Alex Wong's. The reference now to the fact that Alex Wong completed ECODE, a behavior modification program, was only available to him because of continuing violence that included throwing hot water at a corrections officer in 2008. Roger Kwok's record was entirely nonviolent from the time he was arrested until now. He had two shanks in 1995, more than 20 years ago in 1999. There was zero evidence that he'd ever used them. And there was substantial evidence in the record, including from a correctional guard who knew him back when he had his heroin addiction. And then later in time, this was someone who was never violent. He was violent one time during the commission of these murders. Until today, the government never argued that Roger Kwok's offense was more serious than Alex Wong's. I'm surprised to hear it. It is unquestionably true that both were heinous crimes. But Alex Wong volunteered to commit his murder and he conspired to commit a further murder when he was in prison. Roger Kwok committed these crimes. They're terrible crimes. He committed them because he was the new guy in the gang. And the leader of the gang said, let the new guy do it. The differences between the offense, the differences in their prison records argued for a lower sentence for Roger Kwok, which is why it was the government that argued below that you couldn't go above 35 years without creating an unwarranted disparity. So it is surprising now to hear arguments for the first time that you could possibly look at the records of the offense and conclude that Roger Kwok deserved more time. There was a third defendant who was sentenced after this appeal was finalized, who was sentenced in front of Judge Arizari. He was involved in the murders with Alex Wong. He received a sentence of 30 years. It is inconceivable if these three young men, now adults, now, now my client's 44 years old, would have been sentenced by the same judge that Roger Kwok would have gotten the most time. Inconceivable. And Judge Johnson made no effort to argue that based on a comparison of the records, Roger Kwok was more culpable from the standpoint of the offense or based on his record. And indeed, it's quite clear that the only thing he pointed to, what made it apples and oranges, was that he got one letter from someone who wasn't as conciliatory. That's what he pointed to. I read that apples and oranges comment to the difference between the two letters. It comes right after he said that Judge Deary relied on this letter of forgiveness. In this case, I have a letter that's quite different and it's apples and oranges. I mean, I don't, I don't see this as plain error. I don't know that, I'm trying to understand the government says it's harmless, you say, and then they say it's plain. I'm not sure how it's either, how it's rather, how it's plain. We don't think it's harmless and it certainly wasn't invited. We invited no comparison of the victim impact statements in this case. And indeed, a full review of the Wong case reflects that there are four letters there and they ran the gamut from someone who said never let him out to the Gallivan letter, who, because of her, it would appears to be a religious beliefs, ultimately found it in her heart to forgive him and leave it to Judge Deary and to Alex Wong's God to judge him. And here in Roger Kwok's case, we had one cousin who didn't have those views 25 years later. We don't know what the other victims felt because we didn't find them. They didn't submit anything. We submit it was unreasonable to base a higher sentence on the issue of victim forgiveness. And we urge the court to remand it for resentencing. Thank you. We'll reserve decision.